**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

JAE LEE,

       Movant,

v.

UNITED STATES OF AMERICA,

       Respondent.

)
)
)
)
)
)
)
)
)
)
)

Case No. 2:10-cv-02698-JTF-dkv
Case No. 2:09-cr-20011-BBD

---

**ORDER ADOPTING IN PART AND REJECTING IN PART
REPORT AND RECOMMENDATION,
DENYING MOTION PURSUANT TO 28 U.S.C. § 2255
AND
GRANTING A LIMITED CERTIFICATE OF APPEALABILITY**

---

Before the Court is the amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") and the Report and Recommendation ("R&R") issued by United States Magistrate Judge Diane K. Vescovo (ECF No. 59). The Government filed its Objections to Report and Recommendation on August 27, 2013 (ECF No. 13), and Movant filed his Response to Government's Objections to Magistrate's Report and Recommendation on September 30, 2013 (ECF No. 68). For the reasons stated below, the Court ADOPTS the R&R in part and REJECTS it, in part, and DENIES the § 2255 Motion.

**I.       PROCEDURAL HISTORY**

**A.       Case Number 09-20011**

On January 28, 2009, a federal grand jury returned a single-count indictment charging Lee with possessing a mixture and substance containing a detectable amount of controlled 3,4-

methylenedioxymethamphetamine, commonly known as "MDMA" and/or "ecstasy," on or about January 7, 2009, with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1).[1] The factual basis for this charge is stated in the presentence report ("PSR"):

6. The following information was gathered from a review of materials contained in the files of the United States Attorney, including the investigative reports of the Memphis Drug Enforcement Administration (DEA) Task Force.

7. According to the investigative file, a Confidential Informant (CI) advised agents that **Jae Lee**, whom he/she had known for the last twelve years, was involved in drug trafficking since 1999. The CI indicated that between January 2001 and December 2008, the CI had purchased approximately **200 Ecstasy (MDMA) pills** from **Lee**. The CI stated that all the transactions had occurred at **Lee's** residence. The CI provided the following, which is [a] list of the years and approximate number of purchases conducted by the CI with **Lee**. No exact dates or the amounts involved are available for the transactions which are as follows: 5 occasions in 2001; 5 occasions in 2002; 5 occasions in 2003; 5 occasions in 2004; 7 occasions in 2005; 5 occasions in 2006; 6 occasions in 2007; and 2 occasions in 2008. The CI advised agents that he/she purchased one ounce of hydroponic marijuana from **Lee** on two occasions for $350 an ounce.

8. The CI reported to the agents that he/she owed **Lee** $150 for an existing "drug debt" for which **Lee** had "fronted" to the CI. On December 2, 2008, the CI was provided $150 in official government funds and was instructed to meet with **Lee** and settle the debt. Agents conducting surveillance observed the CI proceed to **Lee's** residence, where he/she remained for approximately ten minutes. Agents later met with the CI, who informed that while in **Lee's** residence, the CI observed **Lee** packaging 15 Ecstasy tablets into a cellophane wrapper.

9. On December 11, 2008, agents provided the CI with $300 in official government funds to conduct a buy of approximately **15 Ecstasy pills** from **Lee**. The CI was outfitted with a recording device and was under surveillance of the agents during the transaction. The CI was observed to proceed to **Lee's** residence and conduct the transaction. **Lee** indicated to the CI that he was now charging $20 a pill instead of $15. **Lee** and the CI agreed on the $20 per pill price and made the exchange. Agents later met with the CI who provided the agents with the 15 Ecstasy pills purchased from **Lee**.

10. On January 6, 2009, DEA Task Force Officers and Agents executed a federal search warrant at the residence located at 8288 George Brett

---

[1]     Indictment, <u>United States v. Lee</u>, No. 09-20011-BBD (W.D. Tenn.), ECF No. 1.

Drive, Memphis, Tennessee. Agents had to make forced entry into the residence where they located **Lee** and his girlfriend, Amy Chu, in the bedroom. Agents searched **Lee's** residence and located $32,432 in U.S. Currency located in a blue bag next to the couch; **8 Ecstasy tablets** recovered from a cigarette box located in the book case in the dining room; **80 Ecstasy tablets** found in a plastic bag in the book case in the dining room; 3 Valium tablets recovered from a box hidden underneath the bed in the master bedroom; and a loaded Norinco, Model 90, serial #616901, 7.62 caliber rifle, loaded with 25 live rounds from the master bedroom closet.

      11.     The drug calculations are as follows:

200 Ecstasy Tablets (purchased from the CI from January 2001 to December 2008)
15 Ecstasy Tablets (controlled purchase by the CI on December 11, 2008)
88 Ecstasy Tablets (seized on January 7, 2009 at Lee's residence)
Total = 303 Ecstasy Tablets * 250 mg = 75,750 milligrams (75.75 grams)

75.75 grams of Ecstasy * 500 grams (marijuana equivalent) = 37,875 grams
**Total = 37.87 kilograms of marijuana equivalent**

      12.     It should be noted that the Valium tablets and the hydroponic marijuana did not affect the guideline calculations.

(PSR ¶¶ 6-12.)

On June 17, 2009, pursuant to a written plea agreement, Lee appeared before then-United States District Judge Bernice B. Donald to plead guilty to the sole count of the Indictment.[2] The Plea Agreement did not mention that, by pleading guilty, Lee would automatically be deported after service of his sentence. It also contained the following provision:

This writing constitutes the entire Plea Agreement between the Defendant and the Government with respect to his plea of guilty. No additional promises, representations or inducements other than those referenced in this Plea Agreement have been made to the Defendant or to his attorney with regard to this Plea, and none will be made or entered into unless in writing and signed by all parties.

(Plea Agreement ¶ 6, id., ECF No. 21.)

---

[2]     Min. Entry, United States v. Lee, No. 09-20011-BBD (W.D. Tenn.), ECF No. 20; Mem. of Plea Agreement ("Plea Agreement"), id., ECF No. 21; Guilty Plea Hr'g Tr, id. A copy of the transcript of the change of plea hearing is Exhibit 4 to the evidentiary hearing on the § 2255 Motion and is an exhibit to the original § 2255 Motion (Case No. 10-2698, ECF No. 1-1 at PageID 94-116).

During the plea colloquy, the following exchange occurred:

Q.      And are you a U.S. citizen?

A.      No, Your Honor.

Q.      Okay. A conviction on this charge then could result in your being deported. It could also affect your ability to attain the status of a United States citizen. If you do become a United States citizen, it could affect your rights to participate in certain federal benefits, such as student loans.

Does that affect at all your decision about whether you want to plead guilty or not?

A.      Yes, Your Honor.

Q.      Okay. How does it affect your decision?

A.      I don't understand.

Q.      Okay. Well, knowing those things do you still want to go forward and plead guilty?

A.      Yes, Your Honor.[3]

Movant testified that nobody had made any promises to him that were not in the Plea

Agreement.[4] He also accepted the factual basis for the guilty plea recited by the Government,

including the statement that the quantity of drugs seized was consistent with distribution rather

than personal use.[5]

At a sentencing hearing on September 28, 2009, Judge Donald adopted the PSR and

sentenced Lee to a term of imprisonment of twelve months and one day, to be followed by a

---

[3]      Guilty Plea Hr'g Tr. 9-10.

[4]      Id. at 13.

[5]      Id. at 17.

three-year period of supervised release. Judge Donald also imposed a fine of $5000.[6] Judge

Donald emphasized that the offense was serious despite the relatively small number of pills that

were involved:

> As you and your attorney and the government has all recognized, this is a very . . . serious offense, and it's one that has been ongoing for some period of time. It was not simply one aberrant act, but apparently one time getting caught.

> And while we, you know, the number of pills that we are looking at is just under 300. There is nothing to suggest that that's the universe of pills that were involved in this ten year period.

> And I think it would be fool hardy to believe that the ten year term included only the three hundred.[7]

Judgment was entered on September 29, 2009.[8] A corrected judgment, which delayed

service of the sentence until after January 30, 2010, was entered on October 22, 2009.[9] Lee did

not take a direct appeal.

### B.    Procedural History of Lee's § 2255 Motion

On September 24, 2010, Lee filed a *pro se* § 2255 Motion that argued that his trial

counsel, Larry Fitzgerald, rendered ineffective assistance by

1.    "not only failing to inform LEE that a collateral consequence of his

pleading guilty would subject him to deportation, but actually

---

[6]    Min. Entry, United States v. Lee, No. 09-20011 (W.D. Tenn.), ECF No. 25; Sentencing Hr'g Tr., id. A copy of the sentencing transcript is an exhibit to the original § 2255 Motion (Case No. 10-2698, ECF No. 1-1 at PageID 117-37).

Pursuant to § 2K1.1(c)(11) of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for a drug offense involving between 20 and 40 kilograms of marijuana equivalent is 18. Lee received a two-level enhancement for possession of a firearm, U.S.S.G. § 2D1.1(b)(1), and a three-level reduction for acceptance of responsibility, U.S.S.G. § 3E1.1, resulting in a total offense level of 17. Given his criminal history of I, the base offense level was 24-30 months. Movant did not qualify for the safety valve reduction pursuant to U.S.S.G. § 5C1.2, which was mentioned in ¶ 1 of the Plea Agreement, because of the presence of the firearm.

[7]    Sentencing Hr'g Tr. 15-16.

[8]    J., United States v. Lee, No. 09-20011-BBD (W.D. Tenn.), ECF No. 26.

[9]    Corrected J., id., ECF No. 29.

*affirmatively misadvising* him that he would <u>not</u> be deported <u>if</u> he pleaded guilty";

2. "failing to conduct any pretrial investigation into possible defenses, evidence, witnesses, discovery or search warrant deficiencies, potential lesser offense options, and/or ensuring LEE received proper consideration for the undisclosed benefits the Government received as a result of his plea"; and

3. "confusing the Court at sentencing by misrepresenting LEE was a 'citizen of the United States,' when he was not, and thus, depriving the Court of the knowledge and consideration of a factor (the consequence of deportation) that is commonly relied upon as part of a Court's sentencing discretion."

(ECF No. 1 at PageID 34.) On October 18, 2010, Lee filed an Emergency Motion for Order to Expedite Proceedings. (ECF No. 2.) In an order issued on October 19, 2010, Judge Donald directed Lee to submit an amended motion on the official form. (ECF No. 3.)

On October 28, 2010, Lee filed his amended § 2255 Motion, which asserted the same issues that were presented in the original § 2255 Motion. (ECF No. 5.) On November 2, 2010, Judge Donald denied the Motion to Expedite and directed the Government to respond to the § 2255 Motion. (ECF No. 7.) On November 22, 2010, the Government filed its Response of the United States to Defendant's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 ("Answer"). (ECF No. 9.) Movant filed his Reply to Response of the United States Re: Motion Pursuant [to] 28 U.S.C. § 2255 ("Reply") on December 6, 2010. (ECF No. 10.)

On November 17, 2010, Movant filed an *Emergency* Motion to Bypass Referral to Magistrate, and Order Directing Government to Provide Response Via Facsimile. (ECF No. 8.) On December 8, 2010, Movant filed an *Emergency* Motion for: (1) Setting of Evidentiary Hearing and Order to Transport *Before* January 5, 2010 or, Alternatively, for Final Ruling and COA; and (2) for Production of Search Warrant and Audio Recordings. (ECF No. 11.) In an order issued on June 3, 2011, Judge Donald, *inter alia*, denied the motion for facsimile service as moot, denied the motion for discovery as unnecessary, granted the motion for an evidentiary hearing, and referred the matter to the Magistrate Judge for possible appointment of counsel to represent Lee at the evidentiary hearing. (ECF No. 15.) The order also notified Movant that he "can bypass [the referral to the Magistrate Judge] by promptly notifying the Court that he does not request appointed counsel." (Id. at 3.) On July 19, 2011, an attorney filed a notice of appearance on Movant's behalf. (ECF No. 18.) On October 28, 2011, Movant filed his own factual affidavit in support of his § 2255 Motion. (ECF No. 22-1.)

An evidentiary hearing was set for November 1, 2011. (ECF No. 20.) Movant filed a Motion to Reschedule Hearing (ECF No. 21), which was granted. The hearing was rescheduled for December 13, 2011. (ECF No. 23.) The Government filed a Motion to Continue Hearing and represented that "[t]he defendant's attorney has no objections to the United States' request." (ECF No. 25.) On December 9, 2011, Judge Donald granted the motion to continue.

Because Judge Donald was confirmed as a judge on the Sixth Circuit Court of Appeals, the case was reassigned to United States District Judge Samuel H. Mays, Jr. on December 29, 2011. (ECF No. 27.) On January 5, 2012, Judge Mays referred the matter to United States

Magistrate Judge Diane K. Vescovo to conduct an evidentiary hearing and prepare a report and recommendation. (ECF No. 28.)[10]

Magistrate Judge Vescovo conducted an evidentiary hearing on February 9, 2012. (ECF Nos. 33 & 56.) On March 9, 2012, Movant filed his Post-Hearing Brief in Support of Motion Pursuant to 28 U.S.C. § 2255. (ECF No. 37.) In that brief, Movant argued that his attorney's "performance fell below the standard articulated in Padilla v. Kentucky." (Id. at 6.)[11]  On April 16, 2012, the Government filed its Response of the United States to Petitioner's Post Hearing Brief in Support of Motion Pursuant to 28 U.S.C. § 2255. (ECF No. 40.) On June 11, 2012, Judge Mays issued an order staying the case pending the Supreme Court's decision in Chaidez v. United States, 655 F.3d 684 (7th Cir. 2011), cert. granted, ___ U.S. ___, 132 S. Ct. 2101, 182 L. Ed. 2d 867 (2012) (No. 11-820), which was expected to address the retroactivity of Padilla. (ECF No. 46.)

On February 20, 2013, the Supreme Court issued its decision in Chaidez v. United States, ___ U.S. ___, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013), which held that the decision in Padilla was not retroactively applicable to cases on collateral review. On March 11, 2013, the parties filed a joint motion to lift the stay (ECF No. 48), which the Court granted on March 12, 2013 (ECF No. 49). On April 20, 2013, Movant filed his Second Post-Hearing Brief in Support of Motion Pursuant to 28 U.S.C. § 2255. (ECF No. 54.) In that filing, Movant argued that his conviction should be vacated because:

> (1) trial counsel affirmatively misadvised Mr. Lee that the government was not
> going to seek deportation, (2) trial counsel failed to defend Mr. Lee in that he
> failed to seek a non-deportable disposition because he operated under the
> erroneous assumption that government was not going to seek deportation despite
> that deportation was mandatory upon a conviction for this drug offense, and (3)

---

[10]     The matter was subsequently reassigned to the undersigned judge on August 3, 2012.

[11]     Padilla v. Ky., 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

trial counsel rendered constitutionally ineffective assistance of counsel where he
was not aware of the reasonably foreseeable extension of law that trial counsel
must provide non-citizen clients competent advice on immigration consequences
once the Supreme Court granted the writ of certiorari in <u>Padilla</u>.

(<u>Id</u>. at 2.) On June 20, 2013, the Government filed its Response to Petitioner's Second Post-

Hearing Brief in Support of Motion Pursuant to 28 U.S.C. § 2255. (ECF No. 58.)

On August 6, 2013, Magistrate Judge Vescovo issued her R&R, which recommended that

Movant's § 2255 Motion be granted. (ECF No. 59.) Specifically, the R&R concluded that

"Fitzgerald's representation of Lee was objectively unreasonable in that he affirmatively

misadvised Lee as to the immigration consequences of pleading guilty to the drug-trafficking

crime for which Lee was indicted." (<u>Id</u>. at 27.) The R&R also found that Lee was prejudiced by

his attorney's erroneous advice. Although recognizing that the standard for assessing prejudice is

objective rather than subjective, the R&R found that, had Lee known that he would have been

deported as a collateral consequence of his guilty plea, he would have insisted on going to trial.

(<u>Id</u>. at 29-31.)

On August 27, 2013, the Government filed its Objections to Report and

Recommendations. (ECF No. 63.) On September 30, 2013, Movant filed his Response to

Government's Objections to Magistrate's Report and Recommendation. (ECF No. 68.)

## II.      LEGAL STANDARDS

### A.      Standards for Evaluating § 2255 Motions

Pursuant to 28 U.S.C. § 2255(a),

[a] prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed
in violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." Short v. United States, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." Id. The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims." Valentine v. United States, 488 F.3d 325, 333 (6th Cir. 2007) (internal quotation marks omitted). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Id. (internal quotation marks omitted). Movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. Pough v. United States, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective

standard of reasonableness." Id. at 688, 104 S. Ct. at 2064. "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. [Strickland, 466 U.S.] at 689, 104 S. Ct. 2052. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687, 104 S. Ct. 2052." Harrington v. Richter, ___ U.S. ___, ___, 131 S. Ct. 770, 787, 178 L. Ed. 2d 624 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.[12] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S. Ct. at 2068. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' [Strickland, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.' Id., at 687, 104 S. Ct. 2052." Richter, ___ U.S. at ___, 131 S. Ct. at 787-88; see also id. at ___, 131 S. Ct. at 791-72 ("In assessing prejudice under Strickland, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable.") (citations omitted); Wong v. Belmontes, 558 U.S. 15, 27, 130 S. Ct. 383, 390-91, 175 L. Ed. 2d 328 (2009) (per curiam) ("But Strickland does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, Strickland places the burden on

---

[12]     "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." Id. at 697, 104 S. Ct. at 2069. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. Id. at 697, 104 S. Ct. at 2069.

the defendant, not the State, to show a 'reasonable probability' that the result would have been different.").

The two-part test stated in <u>Strickland</u> applies to challenges to guilty pleas based on the ineffective assistance of counsel. <u>Hill v. Lockhart</u>, 474 U.S. 52, 57-58, 106 S. Ct. 366, 369-70, 88 L. Ed. 2d 203 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice was within the range of competence demanded of attorneys in criminal cases." <u>Id.</u> at 56, 106 S. Ct. at 369 (internal quotation marks omitted). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." <u>Id.</u> at 59, 106 S. Ct. at 370; *see also* <u>Padilla v. Ky.</u>, 559 U.S. at 372, 130 S. Ct. at 1485 ("[T]o obtain relief on this type of claim, a [prisoner] must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").[13]

"Surmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla</u>, 559 U.S. at 371, 130 S. Ct. at 1385.

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten

---

[13] The Supreme Court emphasized that,

[i]n many guilty plea cases, the "prejudice" inquiry will closely resemble the inquiry engaged in by courts reviewing ineffective assistance challenges to convictions obtained through a trial. For example, where the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error "prejudiced" the defendant by causing him to plead guilty rather than going to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea. This assessment, in turn, will depend in large part on a prediction whether the evidence likely would have changed the outcome of a trial. Similarly, where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the "prejudice" inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial.

<u>Hill</u>, 474 U.S. at 59, 106 S. Ct. at 370-71.

the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." Id., at 689, 104 S. Ct. 2052; *see also* Bell v. Cone, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S. Ct. 2052.

Richter, ___ U.S. at ___, 131 S. Ct. at 788.

**B.**      **De Novo Review of a Magistrate Judge's R&R**

The district court has the authority to refer certain pretrial matters to a magistrate judge for resolution. 28 U.S.C. § 636(b)(1)(A). The referral may include dispositive matters such as a motion for summary judgment or a motion for injunctive relief. 28 U.S.C. § 636(b)(1)(B). When a dispositive matter is referred, the magistrate judge's authority only extends to issuing proposed findings of fact and recommendations for disposition, which the district court may adopt or not.

The district court has appellate jurisdiction over any decision the magistrate judge issues pursuant to such a referral. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72. The standard of review applied by the district court depends on the nature of the matter the magistrate judge considers. If the magistrate judge's order addresses a dispositive motion or prisoner petition, the district court should engage in *de novo* review of all portions of the order to which specific written objections have been made. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(b)(3); United States Fid. & Guar. Co. v. Thomas Solvent Co., 955 F.2d 1085, 1088 (6th Cir. 1992).

A *de novo* review requires the reviewing court to reconsider the matter in its entirety, without granting any weight or consideration to the lower court's decision. "The district judge

may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

III.        *DE NOVO* REVIEW OF THE R&R

   A.        **The Proposed Findings of Fact**

In its Objections to the R&R, the Government states as follows:

> The United States agrees with the Magistrate's position that the "testimonies of Lee and Fitzgerald were consistent that deportation was the determinative issue in Lee's decision whether to accept the plea deal." Lee's attorney believed that because he had lived in the country for a long time, Lee would not be deported. This is the same factual and legal error made by Padilla's attorney. The only factual disagreement with the Magistrate's Proposed Findings of Fact and Padilla's facts is that Lee's attorney also advised him that deportation was a possibility, but that the United States Attorney's Office was not seeking deportation. Nevertheless, this advice was also incorrect concerning deportation because Lee's deportation was not a possibility but automatic.

(ECF No. 63 at 15 (citations omitted).)

The R&R discussed Fitzgerald's testimony that he advised Lee that deportation was a possibility but that the United States Attorney's Office was not seeking deportation and concluded that Lee's testimony was more credible than that of Fitzgerald. (*See* ECF No. 59 at 11.) The R&R also credited the testimony of Lee that, at the guilty plea hearing, Fitzgerald assured Lee that Judge Donald's warning about the possible deportation consequence of a guilty plea could be disregarded because it was merely a "standard warning for non-U.S. citizen[s]." (Id. at 8; *see also* id. at 11-13 (crediting Lee's testimony over that of Fitzgerald).) The Government has not objected to the factual finding of the R&R about Fitzgerald's statement to Lee during the plea colloquy. Even if Fitzgerald did, at some point during his discussions with Lee, say that deportation was a possibility, those statements were overshadowed by the assurances Fitzgerald provided Lee that he would likely not be deported as a consequence of his guilty plea.

14

The Court OVERRULES the Government's objection to the Factual Findings in the R&R and ADOPTS those Factual Findings.

### B.     The Proposed Conclusions of Law

The Government has urged the Court to reject the conclusions of law in the R&R in their entirety. (ECF No. 63 at 3-4.) The Government's objections to the R&R's analysis of the deficient performance prong of <u>Strickland v. Washington</u> and <u>Hill v. Lockhart</u> is largely repetitive of the arguments presented to the Magistrate Judge in the post-hearing briefs. (*See* ECF No. 63 at 16-20; *see also* ECF No. 58 at 7-9 (second post-hearing brief).) The Court concludes that the R&R accurately summarizes the Supreme Court's decisions in <u>Padilla</u> and <u>Chaidez</u> (ECF No. 59 at 17-21), accurately states that those decisions do not affect ineffective assistance claims based on affirmative misrepresentations (<u>id.</u> at 21-26), and accurately concludes that Fitzgerald's advice to Lee amounted to an affirmative misrepresentation (<u>id.</u> at 27-29). The Court OVERRULES the Government's objections to this aspect of the Conclusions of Law in the R&R and ADOPTS those Conclusions of Law.

The R&R also concluded that Lee had satisfied the prejudice prong of <u>Strickland</u> and <u>Hill</u>. (<u>Id.</u> at 29-31.)  As previously stated, *see supra* p. 12, in the guilty plea context, the prejudice prong requires the movant to show that "counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and insisted on going to trial." <u>Hill</u>, 474 U.S. at 59, 106 S. Ct. at 370.

The Supreme Court has emphasized that, "to obtain relief on this type of claim, a [prisoner] must convince the court that a decision to reject the plea bargain would have been

rational under the circumstances." <u>Padilla</u>, 559 U.S. at 372, 130 S. Ct. at 1485. A prisoner "cannot make that showing merely by telling [the court] now that [he] would have gone to trial then if [he] had gotten different advice. The test is objective, not subjective . . . ." <u>Pilla v. United States</u>, 668 F.3d 368, 373 (6th Cir. 2012). The Supreme Court also emphasized that "it is often quite difficult for petitioners who have acknowledged their guilt to satisfy <u>Strickland</u>'s prejudice prong." <u>Padilla</u>, 559 U.S. at 371 n.12, 130 S. Ct. at 1485 n.12.

There is relatively little caselaw applying these standards to claims that a movant was misadvised of the deportation consequences of a guilty plea. In <u>Pilla</u>, the petitioner, a native of India who was an assistant professor at Case Western University, falsely reported that she had received hate mail. After an extensive investigation by the University and the FBI, it was determined that the petitioner had sent the mail to herself. She pled guilty to making false, misleading, or fraudulent statements to the FBI, in violation of 18 U.S.C. § 1001, and was sentenced to six months in prison and ordered to pay $66,000 in restitution. <u>Id.</u> at 370. Petitioner's attorney encouraged her to plead guilty after learning that the evidence of her guilt was "overwhelming" and the likelihood of success on a motion to suppress was "close to zero." <u>Id.</u> at 370-71. Subsequently, "[a]n immigration judge determined that Pilla's offense was, in fact, an aggravated felony and that she was therefore removable under 8 U.S.C. § 1227(a)(2)(A)(iii). The Board of Immigration Appeals agreed and dismissed Pilla's appeal." <u>Id.</u> at 371. The Court of Appeals denied Pilla's petition for review. <u>Pilla v. Holder</u>, 458 F. App'x 518 (6th Cir. 2012).

Pilla challenged her guilty plea through a petition for a writ of error *coram nobis*, and the Sixth Circuit denied relief, holding that she had not established prejudice within the meaning of <u>Strickland</u> and <u>Hill</u>. <u>Pilla v. United States</u>, 668 F.3d at 373.[14] The Court of Appeals explained:

---

[14]     A writ of *coram nobis* is "an extraordinary writ sometimes available to federal convicts who have already completed their prison term." <u>Id.</u> at 370.

As noted above, Pilla faced overwhelming evidence of her guilt, which included a video that showed her planting the letters, a CD of incriminating phone conversations, and FBI interview notes documenting her confession. Given this evidence, the district court found that Pilla "had no realistic chance of being acquitted at trial" and that, if she had proceeded to trial, she "had no rational defense, would have been convicted and would have faced a longer term of incarceration." Those findings were not clearly erroneous, or indeed erroneous at all. And had Pilla been convicted after trial, she would have been just as removable as she was after her guilty plea. The only consequence of Bell's inaccurate advice—assuming one believes Pilla's assertion that she would have gone to trial had she gotten accurate advice—is that she got a shorter prison term than otherwise. But more to the point, no rational defendant in Pilla's position would have proceeded to trial in this situation. Pilla therefore has not shown that Bell's advice created even a "reasonable probability" of prejudice. And thus she cannot show that Bell's advice "probably ... altered the outcome of the challenged proceeding," as required for a writ of *coram nobis*. . . .

Id.

   In <u>Haddad v. United States</u>, 486 F. App'x 517, 518 (6th Cir. 2012), an unpublished

decision addressing a petition for writ of error *coram nobis*, the petitioner, a native of Syria, pled

guilty to possessing LSD in 1997, making him deportable. Relying on <u>Pilla</u>, the panel found that

the petitioner could not establish prejudice. The panel reasoned as follows:

   Haddad therefore cannot establish prejudice merely by stating now that he would have gone to trial then if he had been told that his plea would authorize the government to deport him. <u>Pilla</u>, 668 F.3d at 373. "The test is objective, not subjective": to prevail, "'a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.'" <u>Id.</u> (quoting <u>Padilla</u>, 130 S.Ct. at 1485). This in turn requires a "prediction of the likely outcome at trial." <u>Dando v. Yukins</u>, 461 F.3d 791, 798 (6th Cir. 2006); *see* <u>Pilla</u>, 668 F.3d at 373 (analyzing Pilla's chance of success at trial to determine whether she was prejudiced). In many cases, "this inquiry will be dispositive." <u>Maples v. Stegall</u>, 340 F.3d 433, 440 (6th Cir. 2003).

      . . . .

   The same logic [as was presented in <u>Pilla</u>] applies in the present case. Like Pilla, Haddad states now that he would have gone to trial if his attorney had advised him that pleading guilty would make him deportable. But this statement is not enough to establish prejudice. <u>Id.</u> And the evidence against Haddad is strong. He was caught red-handed: while Haddad was entering Canada from the United

States, a customs agent searched Haddad and found three pieces of paper that tested positive for LSD.

Haddad also has no rational defense to the crime of possessing drugs. Before the district court, he asserted that he would have raised the following three possible defenses: the search or seizure was illegal, he did not possess the substances found during the search, and the government could not prove that those substances were actually illegal drugs. But he offers no reason to believe that these defenses had any chance of success, let alone that they were rational. And there are good reasons for discounting each defense, which we address in turn. The Supreme Court has held that routine border searches of persons entering the country do not require reasonable suspicion, probable cause, or a warrant. United States v. Montoya de Hernandez, 473 U.S. 531, 538, 105 S. Ct. 3304, 87 L. Ed. 2d 381 (1985); see United States v. Flores–Montano, 541 U.S. 149, 152–55, 124 S. Ct. 1582, 158 L. Ed. 2d 311 (2004). And although this court has not specifically decided the question whether that doctrine extends to border searches of persons leaving the country, Sixth Circuit precedent suggests that the doctrine does. See United States v. Boumelhem, 339 F.3d 414, 420–423 (6th Cir. 2003) (holding that the doctrine extends to searches of articles leaving the country). The language Boumelhem used in a section heading supports this point: "The Border Search Exception Applies to Persons and Articles Leaving the Country, and Not Only to Those Entering the Country." Id. at 420 (emphasis added); accord United States v. Humphries, 308 Fed. Appx. 892, 896 (6th Cir. 2009) (citing Boumelhem for the proposition that "[w]e have extended the rational underlying the suspicionless search of persons and effects entering the country to situations where persons or articles attempt to exit the country as well" (emphasis removed)). The last two defenses—that Haddad did not possess the substances found during the search and that the government could not prove that those substances were illegal drugs—are frivolous because Haddad was caught personally possessing a substance that tested positive for LSD, which is a controlled substance under federal law, see 21 U.S.C. §§ 802(6), 812 Schedule I(c)(9). The magistrate's Report and Recommendation, which the district court adopted, implicitly reached the same conclusion about the defenses that Haddad asserts he would have raised—namely, that they are not realistic.

In addition to the strong evidence against him and his lack of viable defenses, another weight tipping the scale in favor of Haddad pleading guilty is the benefit he received by doing so. He received the minimum fine ($1000) and no prison time. Had he gone to trial and been convicted, as seems highly likely, he would be just as deportable as he was after pleading guilty and he would have faced imprisonment for up to one year or a higher fine, or both, 21 U.S.C. § 844(a).

The only counterweight Haddad points to in support of his claim that he would have insisted on going to trial is the after-the-fact allegation in his affidavit; in other words, all Haddad offers to support his claim is the claim itself.

Not only is that claim insufficient to show prejudice because the test is objective, *see* Pilla, 668 F.3d at 373, but the entire record goes against it. Like Pilla, Haddad faced strong evidence of his guilt, and if he had gone to trial, he had no rational defense, would have been convicted, would have faced time in prison, and would have been deportable anyway. *See* id. "[N]o rational defendant in [Haddad's] position would have proceeded to trial." Id. Haddad therefore cannot show the prejudice necessary for an ineffective-assistance claim. This conclusion is buttressed by the fact that Haddad does not even argue on appeal that he satisfies the prejudice prong.

Id. at 521-22.

Two district courts in this circuit have also evaluated a prisoner's claim that he would not have pled guilty if he had known that he would be deported. United States v. Chan Ho Shin, 891 F. Supp. 2d 849, 858 (N.D. Ohio 2012), involved a native of South Korea who had become a lawful permanent resident alien of the United States, raised his family in this country, and operated a successful business. He pled guilty to four counts of filing false tax returns and was sentenced to probation. Id. at 851. After the commencement of deportation proceedings, the petitioner filed a petition for a writ of error *coram nobis*. Id. The court denied relief because Shin could not establish prejudice. Id. at 857-58. The court explained:

Even if Shin could show his counsel's performance was deficient and fell below an objective standard of reasonableness, he cannot establish that such deficiency caused him actual prejudice. Shin argues he would not have pled guilty "[h]ad [he] known or been told that [his] guilty plea in this case would lead to [his] automatic removal from the United States". According to Shin, such a blanket assertion is a "sufficient showing" under Hill. Hill, however, says the complete opposite: "[a] petitioner's allegations are insufficient to satisfy the Strickland v. Washington requirement of 'prejudice.'" 474 U.S. at 60, 106 S. Ct. 366. Indeed, the Sixth Circuit has clarified that a petitioner cannot satisfy the prejudice element by merely telling the court that he would have gone to trial if he had received different advice. *See* Pilla, 668 F.3d at 372-73; *see also* Haddad v. United States, 2012 WL 2478355, *3-4 (6th Cir. 2012). Rather, the test is objective, and Shin must convince this Court "that a decision to reject the plea bargain would have been rational under the circumstances." Pilla, 668 F.3d at 373; *see also* Hill, 474 U.S. at 59, 106 S. Ct. 366. Shin's brief is completely silent in this regard.

Notwithstanding Shin's silence, this Court is convinced that accepting the plea was certainly a rational choice in this case. A conviction following a trial would have resulted, at a minimum, in a sentencing guidelines offense level of 14, which carries a sentencing range of 15 to 21 months imprisonment. Shin's acceptance of responsibility led to a lower guidelines range and, due in large part to his cooperation, Shin was ultimately sentenced to a term of probation. Shin offers no argument that he had a realistic chance of being acquitted at trial, and there is no evidence in the record that Shin had a rational defense to the charges.

Moreover, had Shin been convicted after a trial, he would not have eliminated, or even reduced, his chances of removal. The only consequence of his counsel's "erroneous" advice—assuming Shin's assertion that he would have gone to trial had he received more accurate advice—is that he received a more lenient sentence. In short, nothing leads to the conclusion that a rational defendant in Shin's position would have proceeded to trial. Shin fails to show his lawyer's advice created a "reasonable probability" of prejudice, and thus he cannot show that the advice "'probably ... altered the outcome of the challenged proceeding,' as is required for a writ of *coram nobis*." Pilla, 668 F.3d at 373 (quoting Johnson, 237 F.3d at 755).

Id. (record citations omitted).

The court briefly addressed the petitioner's personal circumstances, although not in the

context of its analysis of the prejudice prong:

On one hand, Shin's situation is lamentable. After coming to this country, Shin and his wife were able to build a successful business and raise a family here in Toledo. Shin became a lawful permanent resident and was close to attaining American citizenship. In a letter dated June 2009, his counsel confirmed that but-for his troubles with the IRS, Shin would be a U.S. citizen today. Shin was living the proverbial "American dream," but now he faces deportation.

On the other hand, Shin committed a serious crime—he diverted hundreds of thousands of dollars from his business for personal use, defrauding the Government over a period of years. Had becoming an American citizen been as important to him as he contends, Shin should have avoided cheating and lying to the IRS. Immigration law classifies some crimes as removable offenses, and Shin's was one of them. Nothing in the record demonstrates Shin received ineffective assistance of trial counsel and, for all the reasons stated above, Shin's Petition must be denied.

Id. (record citation omitted).

Finally, United States v. Abou-Khodr, No. 99-CV-81073, 2013 WL 4670856 (E.D. Mich. Aug. 30, 2013), was a successful petition for a writ of error *coram nobis* filed by a native of Lebanon. The petitioner was "legally admitted to the United States on September 29, 1996. He is married with six children, all of whom are citizens of the United States, and he is the part-owner of a family business in this country." Id. at *1. About-Khodr pled guilty to conspiring to possess heroin with the intent to deliver based on the representations of his attorney, made after negotiations with the Government, that if he pled guilty and cooperated he would be allowed to stay in the country. Id. The Government had made a § 5K1.1 motion, which was granted, and Abou-Khodr was sentenced to a term of imprisonment of six months followed by two years of supervised release. Id. at *2. Abou-Khodr submitted an affidavit in support of his petition that stated, in pertinent part, that "because he … was of the firm and committed belief if he … was deported, it would be catastrophic for himself and his family, as well as the family business, he … would rather face the prospect of a long prison term rather than be deported from this country." Id. at *6.

In finding prejudice, the Abou-Khodr court reasoned as follows:

> The government relies on Haddad v. United States, 486 Fed. Appx. 517 (6th Cir. 2012), in support of its position that Abou-Khodr's petition for a writ of *coram nobis* lacks merit. Haddad is easily distinguishable. In that case, defendant filed a petition for a writ of *coram nobis* to vacate his sentence for possession of LSD on the basis that his attorney provided ineffective assistance because he failed to advice [sic] him that pleading guilty would make him deportable. Id. at 518. Unlike this case, the petitioner did not allege that his attorney affirmatively promised him that pleading guilty would allow him to stay in the country, merely that he had failed to inform him that it was a possible consequence. Also, the Sixth Circuit found that the evidence against Haddad was overwhelming where he was stopped at the border and caught red-handed with drugs on his person, and he had no viable defense. Id. at 521. Under these circumstances, the Sixth Circuit ruled that a rational person would have pleaded guilty to the offense and thus, denied the petition for the writ of *coram nobis*. Id. at 522.

In this case, by contrast, it would have been objectively reasonable for Abou-Khodr to insist on going to trial. The evidence against him was weak and circumstantial, relying primarily on his fraternal connection to his brother who was also named as a defendant. According to the government's express agreement at the August 22, 2013 status conference, Abou-Khodr's alleged involvement in the conspiracy was minor and the quantity of drugs involved was minimal. It is the court's recollection that Abou-Khodr's alleged involvement in the conspiracy was not based in any significant respect on any criminal conduct on his part, but on his familial relationships and actions taken at the direction of his brother and others who were the culpable ones. The only conduct attributable to Abou-Khodr in the presentence investigation report is that Abou-Khodr and his brother Kalil were alleged partners of drug supplier Housam Hamdar.

Moreover, the presentence investigation report does not set forth any evidence against Abou-Khodr or describe with any particularity his alleged participation in the conspiracy. Of the thirty-eight paragraphs outlining the offense conduct of the conspiracy in that report, only three paragraphs mention Abou–Khodr at all. Paragraph 14 states, "Khodr's brother, ALI ABOU–KHODR, was also a partner of Hamdar." This is the sum total of the offense conduct attributable to Abou-Khodr in the presentence investigation report. Paragraph 30 mentions Abou-Khodr by name only, but it does not describe his alleged involvement in the conspiracy; it merely states that a search warrant was executed based on three of his brother's alleged fraudulent use of credit cards. Finally, paragraph 38 mentions that Abou-Khodr has entered into a plea agreement with the government. Based on the presentence investigation report, it appears that the government's case against Abou-Khodr was not strong. At issue at trial would be whether he acted with guilty knowledge or simply because of his brother's request.

Abou-Khodr's ability to cooperate with the government against others of the 34 defendants named in the conspiracy, did not arise from his own criminal wrongdoing, but from his interconnections with his relatives, which in a Lebanese family are extremely close-knit. Abou-Khodr has submitted the affidavit of his defense attorney stating:

> 3. That on the basis of the aforementioned review of the government's proofs, it was and is my concrete and professional opinion that the evidence against Mr. Abou-Khodr was weak, circumstantial and "at best" ambiguous concerning the culpability of [my] client.

> 4. That it was and continues to be my professional conclusion my client was essentially "merely present" at various times, dates and places and appeared not to fully appreciate or be cognizant of what may have been transpiring around him.

Abou-Khodr would not have pleaded guilty but for his attorney's false guarantees that he would not be deported, and given the weak and circumstantial evidence against him, there was a likelihood of a favorable outcome should he have proceeded to trial. Accordingly, Abou-Khodr has satisfied both prongs of the Strickland test and has shown ineffective assistance of counsel in violation of his Sixth Amendment rights.

Id. at *7-8 (record citation omitted).

In each of the aforementioned cases, the petitioners appeared to have extensive ties to the United States. The decisions in Shin and Abou-Khodr emphasized the strength of those ties, which included lengthy residence in the United States, wives and children, and business interests. Notably, however, none of those decisions addressed the petitioner's ties to the United States in their analysis of prejudice. Instead, the only relevant factors addressed in the prejudice analysis in Pilla, Haddad and Shin were the strength of the Government's case and the benefit, in the form of a reduced sentence, the petitioner received by pleading guilty. Likewise, in granting relief in Abou-Khodr, the court emphasized the weakness of the Government's case and that petitioner was induced to plead guilty by his attorney's affirmative representation that the plea agreement would allow him to remain in the country.[15]

This case is similar to in Pilla, Haddad and Shin in that the Government's case against Lee was strong. Lee, through counsel, has accepted the Government's version of events at the

---

[15]     Abou-Khodr also appears to have involved affirmative misrepresentations by the Government. As the court explained:

> At the plea hearing, AUSA Joe Allen stated that depending on Abou–Khodr's cooperation, the government would recommend an asylum type program, if appropriate, designed to keep Abou–Khodr in the country, even though he might otherwise be subject to removal. While this court is convinced that the government's promises to assist Abou–Khodr to remain in the United States were made in good faith and without any intention to mislead, there were many alternative ways discussed between counsel in chambers conferences that the government would utilize if possible, to keep Abou–Khodr in this country. Among those alternatives were support for an asylum petition, issuance of a material witness warrant, and support for an "S" visa. Such assurances undoubtedly contributed to induce detrimental reliance by Abou–Khodr in proceeding with his plea. As explained by AUSA Lemisch at the August 22, 2013 status conference, there was never a real possibility that an "S" visa for Abou–Khodr could have been obtained.

Abou-Khodr, 2013 WL 4670856, at *1.

guilty plea hearing and also has not objected to the factual summary in the PSR. At the evidentiary hearing, Lee's attorney testified that there did not appear to be a valid motion to suppress (Evidentiary Hr'g Tr. ("§ 2255 Hr'g Tr.") 87, <u>Lee v. United States</u>, No. 10-2698-JTF-dkv (W.D. Tenn.), ECF No. 56) and that the only colorable defense at trial would have been to argue that the pills that were found were intended for personal use (<u>id.</u> at 89-90). Based on the number of pills that were seized and the sales to the confidential informant, Fitzgerald believed that it would have been "difficult, let's put it that way, not impossible but it would [have been] difficult" to succeed at trial. (<u>Id.</u> at 90.) Fitzgerald testified that "I thought it was a bad case to try." (<u>Id.</u> at 91.) Lee's claim that he provided the pills to friends at cost also is not a viable defense to a drug trafficking charge. *See, e.g.,* <u>United States v. Moore</u>, 423 F. App'x 495, 500 n.2 (6th Cir. 2008) ("A defendant need not intend to *sell* narcotics in order to be guilty of possession with intent to distribute.").

Lee also received tangible benefits from the plea deal. Judge Donald sentenced Lee to a term of imprisonment of one year and one day, a significant downward variance from the guideline sentencing range of twenty-four (24) to thirty-six (36) months.[16] Had Lee been sentenced after a trial, he would have lost the three-point reduction for acceptance of responsibility, leaving him with an offense level of 20. *See supra* p. 5 n.6. Given his criminal history category of I, the guideline sentencing range would have been thirty-three (33) to forty-one (41) months. Thus, the guilty plea itself appears to have greatly reduced Lee's sentence.

Although the R&R purports to apply an objective standard, its analysis of prejudice, which focuses on Lee's ties to the United States and his desire to avoid deportation, is entirely

---

[16]    Judge Donald explained that she varied from the guideline range because, under the circumstance of the case, including the absence of any prior criminal history, Lee's history of gainful employment, and his drug addiction, a guideline sentence was not necessary "to get this defendant's attention and to punish." (Sentencing Hr'g Tr. 16-17.)

subjective. (*See* ECF No. 59 at 29-31.) The proper focus under an objective standard is on whether a reasonable defendant in Lee's situation would have accepted the plea offer and changed his plea to guilty.  In light of the overwhelming evidence of Lee's guilt, a decision to take the case to trial would have almost certainly resulted in a guilty verdict, a significantly longer prison sentence, and subsequent deportation.

Lee's situation is factually similar to that of the petitioner in Shin, who had a wife and children who were United States citizens and who had established a successful business in this country. Despite those factors, the court concluded that he was unable to establish prejudice because he had no rational defense to the charges and no realistic prospect of avoiding a guilty verdict and subsequent deportation. Like Shin, Lee has no rational defense to the charge and no realistic prospect of avoiding conviction and deportation.  Also like Shin, Lee may strongly prefer to remain in the United States, but a rational person in his circumstances would have accepted the plea agreement.[17]

The Court REJECTS this portion of the R&R and HOLDS that Lee has not established prejudice. Therefore, Lee is not entitled to relief on his claim that his attorney rendered ineffective assistance by affirmatively misadvising him of the deportation consequences of a guilty plea.

The two additional claims in Lee's § 2255 Motion were not addressed at the evidentiary hearing, and the R&R concluded that they have been abandoned. (*See* ECF No. 59 at 2 n.2; *see also supra* pp. 5-6 (listing the claims).) Movant has raised no objection to that finding and,

---

[17]     Although the R&R mentions the Government's concession, in its first post-hearing brief, that Lee had satisfied both elements of a Strickland claim (ECF No. 59 at 29; *see also* ECF No. 40 at 2 ("In light of the testimony during the hearing, the United States concedes the petitioner's attorney was deficient in performance and that deficiency prejudiced the petitioner.")), the weight given that factor in the R&R is unclear. The Court gives this factor no weight in light of the evolving positions of both parties in this litigation and the absence of any detrimental reliance by Movant.

therefore, the Court ADOPTS this portion of the R&R and DISMISSES Movant's remaining claims.[18]

The § 2255 Motion is DENIED. Judgment shall be entered for the United States.

## IV.        APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate.

The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. §§ 2253(c)(2) & (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 336, 123 S. Ct. 1029, 1039, 154 L. Ed. 2d 931 (2003) (internal quotation marks and citation omitted); *see also* Henley v. Bell, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). A COA does not require a showing that the appeal will succeed. Miller-El, 537 U.S. at 337, 123 S. Ct. at 1039; Caldwell v. Lewis, 414 F. App'x 809, 814-15 (6th Cir. 2011). Courts should not issue a COA as a matter of course. Bradley v. Birkett, 156 F. App'x 771, 773 (6th Cir. 2005).

---

[18]        In his Second Post-Hearing Brief, Movant purported to raise two additional ineffective assistance claims, namely, that his attorney failed to seek a non-deportable disposition and that he was unaware of the reasonably foreseeable extension of law once the Supreme Court granted certiorari in Padilla. (ECF No. 54 at 2; *see supra* pp. 8-9.) Movant has presented no evidence, and made no argument, that a non-deportable disposition was reasonably likely under the facts of the case. (*See* ECF No. 54 at 8-9.) Even if it were assumed that Padilla was a reasonably foreseeable extension of the law, Movant cannot show prejudice for the reasons previously stated. Therefore, the two issues presented in Movant's Second Post-Hearing Brief to the Magistrate Judge are without merit.

In this case, reasonable jurists could disagree about the resolution of Claim 1 of Movant's § 2255 Motion, that trial counsel affirmatively misadvised him about the deportation consequences of a guilty plea. The Court GRANTS a certificate of appealability on that claim.

Rule 24(a)(1) of the Federal Rules of Appellate Procedure provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. However, if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5). The Court CERTIFIES, pursuant to Rule 24(a), that an appeal in this matter on Claim 1 would be taken in good faith.[19]

IT IS SO ORDERED this 20th day of March, 2014.

BY THE COURT:

_s/John T. Fowlkes, Jr._____
JOHN T. FOWLKES, JR.
United States District Judge

---

[19] Any motion for leave to proceed *in forma pauperis* on appeal must comply with Rule 24(a)(5) and must be filed within 30 days of the date of entry of this order.